# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERNADETTE DAYWALT, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 20-1458 |
| ANDREW SAUL, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**Timothy R. Rice**                                                                                        **March 30, 2021**
**U.S. Magistrate Judge**

      Plaintiff Bernadette Daywalt alleges the Administrative Law Judge (ALJ) erred when he denied her application for Disability Insurance Benefits (DIB) by improperly: (1) evaluating the opinions of two treating doctors; (2) evaluating her subjective complaints; and (3) denying benefits for failing to pursue Botox treatment. Pl. Br. (doc. 17) at 2, 11, 15, 21. I find the ALJ did not properly evaluate Daywalt's subjective pain complaints regarding migraines and will remand.[1]

      Daywalt, who was 58 at her disability onset date, alleges she is disabled due to migraines, memory and hearing loss, a history of cerebrovascular accident, diabetes, diabetic peripheral neuropathy, carpal tunnel syndrome, degenerative disc and joint disease of the cervical spine, and history of rotator cuff tear. R. at 182. Those conditions forced her to stop working on February 28, 2015. Id. Following a June 2018 ALJ hearing, the ALJ denied benefits in a November 2018 decision, finding she could perform past relevant work. Id. at 7-25, 36-60.

      An ALJ may consider a subjective complaint of pain if the claimant establishes a medically determinable impairment capable of causing the alleged symptoms. 20 C.F.R. §

---

[1]     Daywalt consented to my jurisdiction on April 28, 2020 (doc. 5), pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 72, and Local Rule 72.1

404.1529(b). The ALJ must evaluate the intensity and persistence of the symptoms in light of the available evidence and determine the extent to which they limit claimant's ability to work. Id. § 404.1529(c)(3). Although the ALJ discounts uncorroborated subjective complaints of pain, id. § 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled"), migraines are unique because they "do not stem from a physical or chemical abnormality which can be detected by imaging techniques or laboratory techniques." Diaz v. Barnhart, No. 01-525, 2002 WL 32345945, at *6 (E.D. Pa. Mar. 7, 2002).

Daywalt testified her headaches force her to retreat to a dark and quiet room for at least an hour. R. at 42. She claimed her headaches were her worst health issue, occurring three-to-seven days per week and causing sensitivity to noise and light, nausea, blurred vision, auras, and confusion. Id. at 46, 50-51. The ALJ found that Daywalt's impairments could reasonably cause the alleged symptoms, but then summarily concluded that her "statements considering the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Id. at 17.

The ALJ explained that he did not fully credit Daywalt's reports of debilitating migraines because: (1) they became under better control with analgesic support; (2) following a migraine crisis that required hospitalization, she reported reduced frequency by July 2016; (3) although she reported increased frequency by April 2017, those migraines were of reduced intensity because she had "learned to deal with them"; (4) she had found efficacious medications but refused to take them due to side effects; (5) she declined to try Botox against medical advice; and (6) although she reported forgetfulness, these symptoms were not documented in her medical exams. Id. at 17-18. These reasons for discounting Daywalt's statements lack support from Daywalt's medical history.

For example, the ALJ stated that analgesic support improved Daywalt's migraine control, citing to Exhibits 4F and 11F. Id. at 17. I disagree. The only neurology records in those exhibits are from Daywalt's visits to Dr. Vidyadharan on May 2, 2016 (id. at 544-45, 814-15), May 19, 2016 (id. at 542-43, 812-13), and June 22, 2016 (id. at 535-36, 803-04). On May 2, 2016, Dr. Vidyadharan noted Daywalt presented with chronic daily migraines and prescribed a protocol for analgesic use. Id. at 545, 815. At a June 22, 2016 follow-up visit, Daywalt presented with "no changes in the headaches," and Dr. Vidyaharan noted that she has experienced "chronic daily migrainous headaches since 10/20/2015." Id. at 544-45, 803-04. Those records fail to constitute substantial evidence that analgesic support relieved Daywalt's migraines.

Similarly, the ALJ lacked substantial evidence to conclude that Daywalt's headaches improved after July 28, 2016 when she told her sleep medicine provider that she had headaches two-to-three times per week, id. at 708. Daywalt recommended consistent complaints of daily headaches after the July 2016 sleep medicine appointment. See id. at 1166 (daily migraines in July 2017), 1641 (worsening migraines and neuropathy in November 2017), 1635 (daily migraines in January 2018). The ALJ discounted the increased frequency because, in an April 2017 record, Daywalt reported to Dr. Choudry that "she has learned to live with them." Id. at 879. However, the ALJ must explain the evidence supporting his determination, and the reasons for discounting evidence. Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505-06 (3d Cir. 2009). Without explanation, the ALJ discounted the litany of medications prescribed to Daywalt "without significant relief," id. at 883, and Daywalt's July 2017 follow-up, where Dr. Choudry noted her headaches worsened and that she experienced "no relieving factors" for her migraines.

3

Id. at 885. The ALJ should have considered, or explained why he did not consider, these records. Diaz, 577 F.3d at 505-06.

The ALJ also lacked any evidence to justify his finding that Daywalk lacked credibility because she had stopped taking Propranolol due to side effects even though "it did help her headaches." R. at 18. During her July 2017 visit with Dr. Choudry, Daywalt reported she stopped taking Propranolol because "it made her dizzy and made her headaches worse." Id. at 885. Such evidence provides no basis to discredit Daywalt's testimony.

The ALJ also noted Daywalt was "offered Botox, but indicated she would consider this treatment. Subsequent neurology records reflect that the claimant declined to try Botox, reporting that 'her intuition tells her not to use it.'" Id. at 18 (citations omitted). An ALJ may consider a claimant's non-compliance with a treatment plan in assessing her credibility. Smith v. Astrue, 961 F. Supp. 2d 620, 652 n.17 (D. Del. 2013). However, the ALJ "must not draw any inferences about an individual's symptoms…from a failure to seek or pursue medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain…failure to seek medical treatment." SSR 96-7p. Daywalt provided explanations for not seeking Botox. See R. at 1160-70 (uncertainty whether insurance would cover Botox), id. at 1186 (no transportation to reach Botox treatment nearest Botox treatment in different city). The ALJ failed to consider Daywalt's reasons for not seeking Botox.

In discrediting Daywalt's testimony, the ALJ also considered that she reported forgetfulness on a January 2018 visit with Dr. Choudry, but "was fully alert and oriented with normal orientation" on exam. Id. at 18. This finding ignores the myriad reports of forgetfulness throughout the record. R. at 544-45, 1094-95, 1171, 1236, 1635. The ALJ failed to explain why he did not consider those consistent reports.

Moreover, courts have established criteria for an ALJ to consider when assessing a claimant's subjective complaints of migraines, including a recorded history of migraines, diagnoses of migraines, treatment and prescriptions for migraines, and "symptom patterns." Parsley v. Astrue, No. 08-1227, 2009 WL 1940365, at *4 (W.D. Pa. Jul. 2, 2009). The ALJ failed to fulfill his obligation to consider such evidence.

For example, Dr. Choudry and Dr. Vidyadharan, Daywalt's treating neurologists, consistently recorded and diagnosed her migraine history from 2016 through 2018. R. at 543, 545, 1094-95, 1166-75, 1184-87, 1194-97, 1212, 1262, 1635-45. They prescribed tramadol, steroids, Depakote, gabapentin, propranolol, ibuprofen, naproxen, and Dilaudid to treat her migraines. See id. at 1635, 1639. Despite those efforts to provide relief, Daywalt consistently suffered severe migraines, requiring an inpatient hospital visit in October 2015 and an urgent appointment with Dr. Choudry in November 2017. Id. at 1572, 1635. Both neurologists recorded the same migraine symptom patterns of right-side sensory defects, confusion, light sensitivity, relief from time in a dark room, and normal exams. Id. at 543, 545, 1094-95, 1166-75, 1184-87, 1194-97, 1212, 1262, 1635-45. The ALJ erred by failing to consider such evidence. See Parsley, 2009 WL 1940365, at *4-5; Baker v. Barnhart, No. 05-4385, 2006 WL 1722414, at *3, 5 (E.D. Pa. June 21, 2006) (remanding when ALJ discounted claimant's migraine claims despite a recorded history of migraines including treatment notes and diagnoses); Diaz v. Barnhart, No. 01-0525, 2002 WL 32345945, at *6 (E.D. Pa. Mar. 7, 2002) (remanding when ALJ discounted claimant's migraine claims despite treatment and prescription history).

Because I remand this case based on the ALJ's failure to properly weigh Daywalt's subjective complaints of pain, I do not address the additional claims. See Steininger v. Barnhart,

No. 04-5383, 2005 WL 2077375, at *4 (E.D. Pa. Aug, 24, 2005) (not addressing additional arguments because ALJ may reverse his findings after remand).

    An appropriate Order accompanies this opinion.